# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**November 25, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

MONROE E. DAVIS,      )
      )
    Petitioner/Appellant,    )
      )    Appeal No.
      )    01-A-01-9712-CH-00755
VS.      )
      )    Davidson Chancery
      )    No. 96-1310-I
COMMISSIONER DONAL    )
CAMPBELL, ET AL.,    )
      )
    Respondents/Appellees.    )

## APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

MONROE E. DAVIS, #130909
Middle Tennessee Correctional Complex-Annex
7466 Centennial Boulevard
Nashville, Tennessee 37209
    Pro Se/Petitioner/Appellant

JOHN KNOX WALKUP
Attorney General & Reporter

ABIGAIL TURNER
Assistant Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243-0488
    Attorney for Respondents/Appellants

AFFIRMED AND REMANDED

BEN H. CANTRELL
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

An inmate who was disciplined for threatening a correctional officer filed a Petition for Writ of Certiorari, claiming that he was denied due process in the disciplinary proceedings. The trial court dismissed the petition. We affirm.

I.

Monroe E. Davis, an inmate in the Cold Creek Correctional Facility, was temporarily housed in the Middle Tennessee Reception Center. On February 22, 1996, he allegedly directed a threatening statement at a correctional officer. Apparently he and another inmate were discussing the violent death of a female correctional officer which had been reported on the news that day, when he pointed to officer Sheri Smith and said "They are going to find you killed in a van next." He allegedly repeated this statement several times.

That evening, a correctional officer delivered a disciplinary report to Mr. Davis, stating that he was being charged with threatening an employee. The report described the incident and named Correctional Officer Tate as a witness. Mr. Davis refused to sign the report. The next day he was sent back to Cold Creek Correctional Facility.

Another copy of the disciplinary charge was faxed to Cold Creek, with a notice that the disciplinary hearing had been scheduled for February 28, 1996. Mr. Davis acknowledges that the fax was delivered to him on the morning of February 26. He was transported to the Middle Tennessee Reception Center for the hearing, which was conducted by a board of three correctional employees. Mr. Davis was represented by an inmate advisor. Mr. Davis testified, and admitted that he had been discussing the death of a female officer, but denied that he had directed any threat to Officer Smith. Officer Smith testified to the contrary, as did Officer Tate. Mr. Davis did not call any witnesses on his behalf.

At the conclusion of the hearing, the board unanimously found Mr. Davis to be guilty of threatening an employee, and sentenced him to fifteen days in segregation, and another fifteen days to be served as sixty days suspended. All three members of the board signed a hearing summary, which recited the board's findings of fact, and stated the evidence it relied upon in reaching those findings.

Mr. Davis appealed his disciplinary conviction to the warden, who dismissed the appeal on March 4, 1996. He then filed an appeal to the Commissioner of the Department of Correction on March 29, 1996, which was returned unanswered because the fifteen day time limit for such appeals had expired.

On April 25, 1996, Mr. Davis filed his Petition for Writ of Certiorari in the Chancery Court of Davidson County, naming as respondents the Commissioner of the Department of Correction, the Assistant Commissioner, the Warden, and four correctional employees. The Department filed a Motion for Summary Judgment, which was granted on December 1, 1997. This appeal followed.

## II.

A common law Writ of Certiorari will issue only when an inferior tribunal has exceeded its jurisdiction, or when its proceedings are shown to be arbitrary, illegal or fraudulent. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. App. 1994). Mr. Davis alleges that he received inadequate notice of the proceedings against him, and that he was denied the opportunity to present witnesses on his behalf. He also alleges that the outcome of the disciplinary hearing was pre-determined, because one of the respondents had told the hearing panel to find him guilty. These allegations amount to a claim of denial of due process, and thus of illegality on the part of the respondents.

- 3 -

The United States Supreme Court has noted that the unique requirements of prison life necessarily involve the retraction or withdrawal from inmates of many rights and privileges that are routinely afforded to ordinary citizens. *Wolff v. McDonnell*, 418 U.S. 539 (1974). In one case, the Court has held that those who are incarcerated pursuant to a valid conviction of a crime are not entitled to constitutional due process in regard to prison disciplinary procedures that can result in brief periods of disciplinary segregation. *Sandin v. Conner*, 515 U.S. 472 (1995).

*Sandin v. Conner* involved a disciplinary infraction that resulted in Mr. Conner's placement in punitive segregation for thirty days. The Court reasoned that the possibility of such confinement was well within the conditions inherent in the sentence of thirty years to life originally imposed upon him, and that its possible application did not create a liberty interest that would entitle him to due process protections. Such an interest would only arise if the prospective punishment involved significant hardships, beyond the ordinary incidents of prison life. Mr. Davis has not stated any reason why the punishment imposed in this case should be considered in such a light.

But even if the punishment imposed upon Mr. Davis was so far beyond the ordinary incidents of prison life as to require the Department to afford him due process protections, the rights to which he would be entitled would still be limited. As the Court said in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974): "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

The rights that do apply include advance written notice of the charges at least twenty-four hours prior to the hearing, a limited right to call witnesses and present documentary evidence, an impartial decision maker, and a written statement of the evidence relied upon, with the reasons stated for the action taken. After a

thorough examination of the record, we conclude that despite Mr. Davis' complaints to the contrary, the process he received was consistent with the requirements of *Wolff*, if indeed those requirements are even relevant.

In his affidavit, Mr. Davis denies that he was given a copy of the disciplinary report on February 22. Even if the trial court considered his denial to be true (as it was obligated to do when ruling on a Motion for Summary Judgment, *see Mike v. Po Group*, 937 S.W.2d 790, 792 (Tenn. 1996), this would still not raise a question of material fact for purposes of the motion, as Mr. Davis admitted receiving notice of the charges and of the hearing more than twenty-four hours before the hearing was scheduled. Further, Mr. Davis' inmate advisor stated to the Board that he had had enough time to prepare a defense.

Mr. Davis claims, however, that he did not have enough time to prepare an adequate defense, though he does not specify what additional steps he would have taken if he had been granted more time. Since he complains about his inability to call witnesses, we presume that he would have wanted to contact those who might have been willing or able to testify on his behalf.

But the Supreme Court has stated that the right of an inmate to obtain the presence of witnesses in a disciplinary proceeding is limited by the "necessary discretion" of prison officials, who must balance due process against the requirements of institutional safety and valid correctional goals. Such goals include "the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Wolff v. McDonnell* at 566. The Court went on to rule that prison administrators may tailor their procedures and policies to meet the individual requirements of their own institutions.

In Tennessee, the procedure for a prisoner who wishes to call witnesses is to prepare and submit form CR-3511 at least twenty-four hours in advance, listing the witnesses he wishes to call, and requesting their presence at his hearing. Prison officials may then arrange for the witnesses to appear, if doing so does not interfere with security considerations or with other legitimate concerns.

The record shows that Mr. Davis did not submit the required form. He claims that he did not have time to prepare the form, and that the witnesses he wished to call had all been transferred to other institutions. While it is clear that he did not have the opportunity to interview prospective witnesses to find out in advance what they would say, we do not believe that under the requirements of *Wolff* he would be entitled to do so. He could, however, have listed those inmates and other individuals who were present at the time of the alleged threat, and who could have testified as to what really happened. We find it significant that nowhere in the pleadings, or in the brief he has presented to this court, does he name a single person who he would expect to testify on his behalf.

Finally, Mr. Davis claimed that one of the respondents, Sgt. Eric Qualls, told him that the disciplinary board would find him guilty, and that he advised the board to make a finding of guilt. The record shows that Sgt. Qualls was originally named as the chairperson of the disciplinary board, but that Mr. Davis objected in writing to his appointment, alleging that a close personal relationship between Sgt. Qualls and Sheri Smith would prevent him from being impartial.

The warden honored Mr. Davis' request and removed Sgt. Qualls from the board, replacing him as chairperson with Angela Sledge, an administrative assistant with the department. In her affidavit, Ms. Sledge denied that anyone had told the board to find Mr. Davis guilty. We note, however, that even if Sgt. Qualls had made the alleged statement (which would have been extremely unprofessional on his

part), there is nothing in the record to indicate that the board was obligated or inclined to take orders from him. We therefore cannot find, on the basis of the record before us, that Mr. Davis was deprived of a hearing before an impartial decision-making body.

### III.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE